UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Matthew Ryntz**, an individual,

      Plaintiff,                      Case No.: 2:25-cv-13343

v.                              **COMPLAINT**

**Jeffrey Kelosky,** an individual, and      **DEMAND FOR JURY TRIAL**
**Jeffrey Dean Investments, Inc. d/b/a**
**Stratus Building Solutions**,

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Matthew Ryntz ("Plaintiff"), through his attorneys, Morgan and Morgan, PA, submits his Complaint against Defendants, Jeffery Kelosky, Jeffery Dean Investments, Inc. d/b/a Stratus Building Solutions of Detroit (collectively "Defendants").

## INTRODUCTION

1. Plaintiff brings this action to redress unlawful race retaliation in violation of federal and state law.

2. Despite being a top-performing employee and earning a promotion to Sales Director, Plaintiff was subjected to retaliation orchestrated by Defendants for objecting to engaging in race discrimination.

3. When he objected, Plaintiff was forced to endure severe retaliation that culminated in his constructive discharge.

4. Defendants' conduct included stripping accounts from African American sub-franchisees, refusing to contract with Black franchisees, and, after Plaintiff complained, imposing upon Plaintiff, unattainable performance goals, withholding commissions, and subjecting Plaintiff to daily verbal abuse.

5. Plaintiff seeks all available remedies to hold Defendants accountable for their egregious and unlawful actions.

## PARTIES

1. Plaintiff, Matthew Ryntz (Plaintiff), was employed by Jeffery Dean Investments, Inc. d/b/a Stratus Building Solutions of Detroit from April 2021 until he was constructively discharged on May 21, 2025.

2. Defendant, Jeffrey Kelosky (Defendant Kelosky), controlled Jeffery Dean Investments, Inc. d/b/a Stratus Building Solutions of Detroit (Defendant Stratus) and made all hiring, firing, and disciplinary decisions.

3. Jeffery Dean Investments, Inc. d/b/a Stratus Building Solutions of Detroit employed Plaintiff during the relevant period and was controlled by Defendant Kelosky.

## JURISDICTION AND VENUE

4. Jurisdiction is proper under 28 USC § 1331 because one or more of the Plaintiff's claims arise under Federal law.

5. Venue is proper because most or all events giving rise to the current Complaint occurred in this district.

6. At all times relevant, Defendants were covered employers under the Michigan Elliot Larsen Civil Rights Act.

7. At all times relevant, Defendant Stratus was a covered employer under Title VII and 42 USC 1981.

## **FACTUAL ALLEGATIONS**

1. On April 12, 2021, Defendants brought Plaintiff on board as a sales associate—a role in which Plaintiff quickly distinguished himself.

2. By April 2024, Plaintiff's exceptional performance earned him a promotion to Sales Director, a testament to his skill and dedication.

3. Every major employment decision—hiring, promotion, and ultimately termination—was made by Jeff Kelosky, the owner of Stratus Building Solutions.

4. Plaintiff consistently exceeded expectations, ranking among the top salespeople nationwide for multiple consecutive years.

5. In May 2023, Plaintiff began to observe troubling signs of discrimination within the organization.

6. Defendants expanded their operations department, hiring additional personnel.

7. Nearly all of these new hires were of Latin descent, and soon, these employees began redistributing accounts in a manner that appeared discriminatory.

8. Plaintiff noticed that high-value accounts were systematically stripped from African American sub-franchisees.

9. These lucrative accounts were then reassigned—almost exclusively—to sub-franchisees of Latin descent.

10. No lucrative accounts were redistributed to African American franchisees even where their performance was exceptional and exceed that of their Hispanic/Latin counter parts.

11. Around this time, Plaintiff began receiving complaints from numerous Black sub-franchisees alleging unfair treatment in account distribution.

12. Alarmed, Plaintiff grew deeply concerned about what appeared to be a deliberate pattern of discrimination against Black sub-franchisees and prospective Black franchisees.

13. On multiple occasions, Plaintiff confided in a coworker, expressing his belief that Defendants were engaging in race-based discrimination by removing accounts from Black sub-franchisees and refusing to contract with prospective franchisees because of their race.

14. Plaintiff repeatedly voiced these concerns, noting that witnessing such discrimination was causing him significant mental and emotional distress.

15. In 2025, Defendant Kelosky made an explicit and shocking admission: he directed the operations team to sign only Hispanic franchisees and he ordered Plaintiff to place work exclusively for Hispanic franchisees.

16. Plaintiff immediately objected, warning Kelosky that such practices constituted unlawful race discrimination.

17. Plaintiff further pointed out that Defendants' recent hiring patterns appeared discriminatory.

18. Specifically, Plaintiff observed that white employees were being systematically replaced by Hispanic employees.

19. Plaintiff raised his concerns about these hiring practices, emphasizing their illegality.

20. Kelosky dismissed Plaintiff's objections, claiming that operations "makes its own decisions," and he had ordered them to only engage with Hispanic franchisees.

21. Immediately after this meeting, Plaintiff shared Kelosky's comments with a coworker, expressing frustration over Kelosky's indifference.

22. The coworker agreed, noting a clear pattern of Defendants refusing to do business with African Americans since the hiring of Amanda and Andrea in operations.

23. The coworker confirmed that profitable accounts were being taken from African American sub-franchisees and reassigned to Hispanic sub-franchisees.

24. Shortly after Plaintiff objected to these discriminatory practices, Kelosky began retaliating against him.

25. Kelosky placed Plaintiff on a Performance Improvement Plan ("PIP") for alleged substandard sales.

26. The PIP imposed inflated, unattainable sales goals—designed to ensure Plaintiff's failure.

27. Ironically, at the time Plaintiff was placed on the PIP, he ranked among the top 15 salespeople nationwide—a clear indicator of his outstanding performance.

28. Kelosky escalated the retaliation by withholding Plaintiff's commissions and redistributing them to Hispanic members of the operations team.

29. Despite these manipulations, Plaintiff remained among the top salespeople nationwide—a testament to his resilience and excellence.

30. Kelosky's retaliation further intensified.

31. He began screaming at Plaintiff, berating him during meetings, and subjecting him to verbal abuse in front of coworkers and customers.

32. This abuse became a daily occurrence, with Kelosky ridiculing Plaintiff for failing to meet the impossible goals he had imposed.

33. The relentless barrage of insults and humiliation took a severe mental and physical toll on Plaintiff.

34. Plaintiff's health deteriorated, and his previously manageable medical conditions worsened significantly.

35. Plaintiff developed severe anxiety and depression, which disrupted his personal life, caused insomnia, and left him plagued by intrusive thoughts about work and Kelosky's abuse.

36. On May 13, 2025, the retaliation became unbearable; Plaintiff saw the writing on the wall—he understood Kelosky would continue to retaliate against Plaintiff and craft a false narrative in order to fire Plaintiff without consequence.

37. Plaintiff, unfortunately, was forced Plaintiff to resign.

38. In a desperate attempt to leave peacefully, Plaintiff submitted a professional resignation letter thanking the company for the opportunity.

39. Even then, Kelosky's hostility persisted, compelling Plaintiff to bring a police escort to retrieve his belongings from Defendants' office.

40. Plaintiff continues to suffer from significant stress, anxiety, depression, and intrusive thoughts stemming from his objections to Defendants' race discrimination and the retaliation that followed.

41. On or around July 1, 2025, Plaintiff filed a charge of discrimination with the EEOC, which issued a Right-to-Sue letter on July 22, 2025.

## COUNT I – DEFENDANT STRATUS
## RETALIATION FOR PROTECTED ACTIVITY UNDER TITLE VII

42. Plaintiff incorporates paragraphs 1-41 as if fully set forth herein.

43. Plaintiff engaged in protected activity when he opposed discriminating against franchisees based on their race.

44. Plaintiff engaged in protected activity when he complained that Defendant Stratus appeared to engage in race discrimination in hiring by only hiring Hispanic/Latin personnel.

45. Defendant Stratus was aware of Plaintiff's complaints because Plaintiff complained directly to the owner, Jeffrey Kelosky.

46. Defendant took materially adverse actions against Plaintiff by redistributing his earned commissions, placing him on an impossible PIP, and ultimately constructively discharging his employment.

47. There is a causal connection between the protected activity and the adverse action because Plaintiff's performance goals were increased to unrealistic and unattainable goals only after he objected to the discriminatory conduct.

48. Likewise, Defendant Kelosky berated, demeaned, belittled, and screamed at Plaintiff publicly and constantly in order to make his working conditions intolerable.

49. Ultimately, Plaintiff's working conditions became so intolerable his physical and mental health declined significantly.

50. As a result of the intolerable conditions imposed by Defendants, Plaintiff was forced to resign.

51. Plaintiff's objection to the discriminatory practices is the but-for-cause of his constructive discharge.

WHEREFORE, Plaintiff requests the following relief is available under the Law:

    a.  Past and future economic damages;

    b.  Past and future emotional distress damages;

    c.  Punitive/liquidated damages;

    d.  Attorneys' fees;

    e.  All other damages available under state law, federal law, and/or the court rules; and

    f.  All such other relief this court deems just and equitable.

## COUNT II – DEFENDANTS STRATUS AND KELOSKY RETALIATION FOR PROTECTED ACTIVITY UNDER ELCRA

52. Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

53. Plaintiff engaged in protected activity when he opposed discriminating against franchisees based on their race.

54. Plaintiff engaged in protected activity when he complained that Defendant Stratus appeared to engage in race discrimination in hiring by only hiring Hispanic/Latin personnel.

55. Defendant Stratus was aware of Plaintiff's complaints because Plaintiff complained directly to the owner, Jeffrey Kelosky.

56. Defendant took materially adverse actions against Plaintiff by redistributing his earned commissions, placing him on an impossible PIP, and ultimately constructively discharging his employment.

57. There is a causal connection between the protected activity and the adverse action because Plaintiff's performance goals were increased to unrealistic and unattainable goals only after he objected to the discriminatory conduct.

58. Likewise, Defendant Kelosky berated, demeaned, belittled, and screamed at Plaintiff publicly and constantly in order to make his working conditions intolerable.

59. Ultimately, Plaintiff's working conditions became so intolerable his physical and mental health declined significantly.

60. As a result of the intolerable conditions imposed by Defendants, Plaintiff was forced to resign.

61. Plaintiff's objection to the discriminatory practices is the but-for-cause or a significant factor of his constructive discharge.

WHEREFORE, Plaintiff requests the following relief is available under the Law:

a.  Past and future economic damages;

b.  Past and future emotional distress damages;

c. Attorneys' fees;

d. All other damages available under state law, federal law, and/or the court rules; and

e. All such other relief this court deems just and equitable.

## COUNT III – DEFENDANTS STRATUS AND KELOSKY RETALIATION FOR PROTECTED ACTICITY PURSUANT TO 42 USC 1981

62. Plaintiff incorporates paragraphs 1-61 as if fully set forth herein.

63. Plaintiff engaged in protected activity when he opposed discriminating against franchisees based on their race.

64. Plaintiff engaged in protected activity when he complained that Defendant Stratus appeared to engage in race discrimination in hiring by only hiring Hispanic/Latin personnel.

65. Defendant Stratus was aware of Plaintiff's complaints because Plaintiff complained directly to the owner, Jeffrey Kelosky.

66. Defendant took materially adverse actions against Plaintiff by redistributing his earned commissions, placing him on an impossible PIP, and ultimately constructively discharging his employment.

67. There is a causal connection between the protected activity and the adverse action because Plaintiff's performance goals were increased to unrealistic and unattainable goals only after he objected to the discriminatory conduct.

68. Likewise, Defendant Kelosky berated, demeaned, belittled, and screamed at Plaintiff publicly and constantly in order to make his working conditions intolerable.

69. Ultimately, Plaintiff's working conditions became so intolerable his physical and mental health declined significantly.

70. As a result of the intolerable conditions imposed by Defendants, Plaintiff was forced to resign.

71. Plaintiff's objection to the discriminatory practices in contracting with African American Franchisees is the but-for-cause of his constructive discharge.

WHEREFORE, Plaintiff requests the following relief is available under the Law:

g.  Past and future economic damages;

h.  Past and future emotional distress damages;

i.  Punitive/liquidated damages;

j.  Attorneys' fees;

k.  All other damages available under state law, federal law, and/or the court rules; and

l.  All such other relief this court deems just and equitable.

## **<u>JURY DEMAND</u>**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury.

Dated: October 21, 2025

Respectfully Submitted,

/s/ *Anna Kozak*
**Anna Kozak (P84465)**
MORGAN & MORGAN
Attorneys for Plaintiff
150 W. Jefferson Ave, Suite 1400
Detroit, MI 48226
Phone:(313) 739-1969
Fax: (313) 739-1994
Anna.Kozak@forthepeople.com